UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

IN RE:
JAMES BROOKE AKER and
NANCY GREENE AKER                                      Chapter 7

              Debtors                   Case No. 06-20847

---

DIANA G. ADAMS,                         )
United States Trustee for Region 2      )    Adversary Proceeding
                                        )
            Plaintiff                )    No. 07-2027
                                        )
    v.                                  )
                                        )
JAMES BROOKE AKER and                   )
NANCY GREENE AKER                       )
                                        )
            Defendants               )

---

**APPEARANCES:**

Steven E. Mackey, Esq.
Office of the U.S. Trustee
The Giaimo Federal Building, 150 Court Street, Room 302, New Haven, CT 06510
Counsel for Plaintiff - United States Trustee

Patrick W. Boatman, Esq.
Law Offices of Patrick W. Boatman, LLC
111 Founders Plaza, Suite 1000, East Hartford, CT 06108
Counsel for Defendant - Debtors

---

**MEMORANDUM OF DECISION**

**KRECHEVSKY, U.S.B.J.**

I.

The matter before the Court is the adversary proceeding Diana G. Adams, United States Trustee for Region 2 ("the UST"), commenced on June 18, 2007, seeking

to deny the Debtors a discharge pursuant to Bankruptcy Code §§727(a)(2) (concealed assets) and (a)(4)(A) (false oath), based on their failure to schedule as an asset their interest in a timeshare property.

II.

James Brooke Aker ("Mr. Aker") and Nancy Greene Aker ("Mrs. Aker;" together "the Debtors"), on September 12, 2006, filed a joint Chapter 7 bankruptcy petition. Mr. Aker was the sole shareholder and only employee of Acuity Software, Inc.("Acuity"). At the meeting of creditors on October 19, 2006, the Chapter 7 trustee's questions focused on matters concerning the relationship between Mr. Aker and Acuity (e.g., the Debtors' tax returns, Acuity's profits/losses, and a pending patent application) and indicated that, because of Mr. Aker's business ownership, the UST would be further examining the Debtors' eligibility for Chapter 7 relief under the "means test." Subsequently, the UST requested, and the Debtors provided, numerous documents[1] concerning their income. At the UST's May 14, 2007 examination of the Debtor pursuant to Fed. R. Bankr. P. 2004, at which Steven E. Mackey, Esq. ("Mr. Mackey"), counsel for the UST, questioned the Mr. Aker concerning the documents provided, the following colloquy ensued:

| | |
|---|---|
| Mr. Mackey: | Okay. Do you – do you and your wife own – have you ever owned – a time share? |
| Mr. Aker: | Yes, we do own a timeshare. |
| Mr. Mackey: | Okay. And what – is that time share at Smugglers' Notch? |

---

[1] The UST's Exhibit 10 is a photograph showing that, in response to her requests, the Debtors provided a stack of documents (bank statements, etc.) measuring 16" high.

2

| | |
|---|---|
| Mr. Aker: | Yes. |
| Mr. Mackey: | Okay. And that's in Vermont just for the record if anyone doesn't happen to know – |
| Mr. Aker: | Yeah. |
| Mr. Mackey: | – where that is. And can you tell me something about that time share, when is it? |
| Mr. Aker: | It's a week in the winter and another floating week throughout the year. |
| Mr. Mackey: | Okay. <u>From the documents</u> that we – <u>that we received</u> it is – it says that it's Week 7. |
| . . . | |
| Mr. Mackey: | [L]ooking at the bankruptcy petition . . . . Usually under Schedule A, we have interest in real estate, and under Schedule A we have your home listed, but is there some reason why the time share at Smugglers' Notch wasn't listed there? |
| Mr. Aker: | I don't know the answer to that. And, again, I think it should be. |
| . . . | |
| Mr. Mackey: | Were you able to find anything in the petition schedule and statement of financial affairs where the mention of Smugglers' Notch could be found? |
| Mr. Aker: | No. |

(Exh. 5 at 36 - 41 (emphasis added))

The UST commenced the instant adversary proceeding on June 18, 2007. The Debtors, on June 19, 2007, filed amended bankruptcy schedules which included the timeshare interest.

The parties filed pretrial memoranda in support of their positions and the Court held a hearing on June 6, 2008, at which both Debtors testified and a number of documents were admitted into evidence.

3

## III.

## DISCUSSION

Because denial of discharge is an "extreme penalty," the provisions of §727 are "construed strictly against those who object to the debtor's discharge and liberally in favor of the bankrupt." State Bank of India v. Chalasani (In re Chalasani), 92 F.3d 1300, 1310 (2d Cir. 1996) (citation and quotation marks omitted).

The plaintiff has the burden of proof in an adversary proceeding objecting to discharge. Fed. R. Bankr. P. 4005. The standard of proof is the preponderance of the evidence. Wolfson v. Wolfson (In re Wolfson), 152 B.R. 830, 832 (S.D.N.Y. 1993). "Once sufficient evidence is presented by the plaintiff to satisfy the burden of going forward with the evidence, the burden thereafter shifts to the debtor to provide evidence to rebut the plaintiff's prima facie case. The plaintiff, however, always bears the ultimate burden of proving, by a preponderance of the evidence, the essential elements of an alleged objection to discharge." PaineWebber, Inc. v. Gollomp (In re Gollomp), 198 B.R. 433, 440 (S.D.N.Y. 1996).

### A. Elements of §727(a)(2)

"The exception to discharge in [§ 727(a)(2)] essentially 'consists of two components: an act (i.e., a transfer or a concealment of property) and an improper intent (i.e., a subjective intent to hinder, delay, or defraud a creditor)'." In re Kontrick, 295 F.3d 724, 735-37 (7th Cir. 2002) (quoting Rosen v. Bezner, 996 F.2d 1527, 1531 (3d. Cir.1993)) , aff'd, 540 U.S. 443 (2003). To support an objection to discharge pursuant to Bankruptcy Code §727(a)(2), the plaintiff must prove that (1) the debtor (2) after, or within one year prior to, filing the bankruptcy petition (3) transferred or

concealed (4) property of the debtor (prepetition) or the estate (postpetition) (5) with the intent to hinder, delay or defraud a creditor. See, e.g. In re Kontrick, 295 F.3d at 736.

Section 727(a)(2) requires that the plaintiff prove the debtor's actual intent to hinder, delay or defraud his creditors. "Constructive fraudulent intent ... cannot be the basis for the denial of discharge." In re Adlman, 541 F.2d 999, 1003 (2d Cir.1976); See also In re Devers, 759 F.2d 751, 753-754 (9th Cir. 1985); The Cadle Co. v. DiFabio (In re DiFabio), 314 B.R. 281, 285 (Bankr. D.Conn. 2004).

### B.    Elements of §727(a)(4)

To support an objection to discharge pursuant to Bankruptcy Code §727(a)(4), the plaintiff must prove that:

(i)    the debtor made the statement under oath;
(ii)   such statement was false;
(iii)  the debtor knew the statement was false;
(iv)   the debtor made the statement with fraudulent intent; and
(v)    the statement related materially to the bankruptcy case.

See, e.g. Northeast Alliance Fed. Credit Union v. Garcia (In re Garcia), 260 B.R. 622, 631 (Bankr. D.Conn. 2001) (citations omitted).

> Statements made in a bankruptcy petition and/or schedules are covered by §727(a)(4) . . . . Once the objecting creditor . . . has produced persuasive evidence of a false statement, the burden of production shifts to the debtor to come forward with some credible explanation for a false statement on the schedules. A statement is not fraudulent within the meaning of the false statement exception to discharge simply because it is false.

Id. (citations omitted).

As in §727(a)(2), the plaintiff objecting to a debtor's discharge pursuant to §727(a)(4), must prove actual, not just constructive, fraudulent intent. See, e.g. Id.

### C.    Actual Fraudulent Intent Requirement

"Since the question of actual fraud involves the parties' states of mind, it is not ordinarily proven by direct evidence, but rather, by inference from other facts proven. . . ." Citizens Bank of Clearwater v. Hunt, 927 F.2d 707, 711 (2d Cir. 1991) (citations and internal quotation marks omitted).

The UST contends that the seven- month delay between the filing of the petition in September, 2006 and Mr. Aker's acknowledgement, in May, 2007, of the timeshare ownership at the Rule 2004 examination is sufficient to support an inference of fraudulent intent. The UST avers that the omission of the timeshare interest cannot have been an oversight "especially when they paid periodic fees on it and visited the property for up to two weeks a year." (UST's Brief at 15.) "In the [UST's] view, the only possible excuse that the [Debtors] can posit is that they cared so little for the bankruptcy process they set in progress and their duties thereunder that they gave their attorney incomplete information and failed to read their bankruptcy petition, schedules and statement of financial affairs, but still attested to the truthfulness of their statements under penalty of perjury." (Id. at 16.)

The Debtors testified that, at the time they were preparing their bankruptcy petition, they were focused on ensuring the accuracy of the information used in the "means test;" they anticipated, as a result of their above-median income and Mr. Aker's ownership of his own business, that their eligibility for Chapter 7 relief would be meticulously reviewed by the office of the UST. The Debtors testified that, at the time in question, they were preoccupied with caring for their adolescent son who was suffering from a serious psychiatric disorder and had made several suicide attempts.

6

In September, 2006, the month the petition was filed, the Debtors' son was hospitalized following one such attempt. On May 14, 2007, the date of the Rule 2004 examination, Mrs. Aker was unable to attend because her son's condition had deteriorated necessitating another hospitalization.

The Debtors testified that, as a result of their son's condition, they had been unable to utilize the timeshare during the preceding two years. The Debtors had, years earlier, obtained a home equity loan, the proceeds of which were used (in part) to pay off the loan used to purchase the timeshare. The timeshare fee of about $700 was payable only once a year. From the timeshare statements the Debtors put into evidence, and the notations indicated thereon, it appears that the Debtors paid the timeshare fees, several months late, online by credit card. The Debtors' total credit card debt, listed in Schedule F (unsecured nonpriority debt), at the time of their petition was almost $70,000.

The Court finds the Debtors credible witnesses. Their testimony that, at the time they signed the petition, they failed to notice that the timeshare interest was omitted because they were preoccupied with their son's illness and were focusing their attention on those items that affected the "means test" calculations is well-supported by the evidence adduced at the hearing and suffices to rebut any inference of fraudulent intent. As soon as the omission was pointed out to Mr. Aker at the Rule 2004 examination, he readily acknowledged it and, shortly thereafter, the Debtors amended their petition to include the timeshare. The Court concludes that the UST has failed to meet her burden of proof that the Debtors intentionally omitted the timeshare interest in order to hinder, delay, or defraud any of their creditors. Because such intent

is an essential element of both counts of the complaint, the UST's objection to entry of the Debtors' discharge is overruled.

### IV.

### CONCLUSION

In accordance with the forgoing discussion, the Court concludes that the UST's objection to discharge is overruled and that the Debtors are entitled to a discharge. Judgment shall so enter.

Dated at Hartford, Connecticut this 25 day of June, 2008.

_____
ROBERT L. KRECHEVSKY
UNITED STATES BANKRUPTCY JUDGE